**TOURISM INDUSTRIES, Plaintiff**

**v.**

**DENNIS HOURIGAN and AIRWAYS HEATING AND AIR CONDITIONING, INC., Defendants**

Civil No. 892/1992

Territorial Court of the Virgin Islands

Div. of St. Croix, at Kingshill

March 7, 1995

Lee J. Rohn, Esq., (Law Office of Rohn & Cusick), St. Croix, V.I., *for Plaintiff*

Andres C. Simpson, Esq., (Bryant, White & Associates), St. Croix, V.I., *for Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

This matter was heard by the Court on May 11, 1994. At the outset, the parties stipulated that the total damages were $3600.00. A trial was held on the issue of liability alone. Specifically, the issue before the Court is whether or not defendants are liable for the damage done to a rental vehicle which defendant Hourigan had leased from the plaintiffs and which was involved in an accident while being driven by a third person who Hourigan claims took the keys from his hotel room without his knowledge or permission.

## FACTS

Defendant Hourigan, an employee of defendant Airways Heating and Air Conditioning, Inc. rented a 1991 Suzuki Swift from plaintiff on January 9, 1992. The relevant portions of the rental agreement between the parties, a form contract provided by plaintiff, indicates that Hourigan declined the Collision Damage Waiver ("CDW"). The contract states that as a result "Lessee shall be responsible to pay for all collision damage to Vehicle regardless of whether Lessee is at fault. . ." This information is reiterated, along with other information found elsewhere on the main contract, on a separate form only four paragraphs long. Paragraph 3 of that document states that "if CDW is declined, customer agrees to pay at the time of return of vehicle, for any and all damages up to FULL VALUE (handwritten) regardless of whether it is caused by renter or by persons or causes known or unknown". However, on the reverse of the form contract, Paragraph seven provides that

"[i]n the event of loss of or damage to Vehicle, whether or not due to what Lessee does or does not do, Lessee shall be responsible for and shall pay LESSOR (on demand) the amount of such loss or damage, except: . . . (b) *Lessee is NOT liable for*

92

*accidental loss of or damage to Vehicle due to fire, theft or any combined additional coverage peril except where Lessee has allowed another person . . . to come into possession of the vehicle, or the keys* to the vehicle, then the Lessee shall be responsible to LESSOR for all expenses, damages and rental charges incurred."

Rental Agreement, ¶7. (emphasis added)

After leasing the vehicle, Hourigan drove around St. Croix on the business which had brought him here. Later in the afternoon, he went to several bars, accompanied by a man whom he had just met and knew only as John. The men returned to Hourigan's hotel late in the evening and John went up to Hourigan's room for one more drink. He stayed approximately 15 minutes. After he left, Hourigan went to sleep. Hourigan was awakened later when John returned with the police. John told him that he had been driving the car and wrecked it. John quickly eluded the police at the hotel and has not been located.

Hourigan maintains that the car was taken without his permission and that therefore he is not liable for its damage due to the provision at paragraph 7 of the contract, reprinted above. The police report indicates that Hourigan informed the police at that time that John had taken the keys without his permission. The police report describes the incident as the unauthorized use of a vehicle.[1] The internal report made by plaintiff from information given by Hourigan indicates that the car was reported "stolen then wreacked (sic)". Plaintiff, however, maintains that Hourigan is responsible for the damage to the vehicle. Plaintiff claims that either Hourigan allowed John to use the car, or that if he did not, John did not have the requisite intent to permanently deprive Hourigan of the vehicle, as is consistent with theft.

## ANALYSIS

■ The issue in this case, whether or not Hourigan is liable for the damage to the plaintiff's vehicle, is controlled by the interpre-

---

[1] This offense is codified at V.I. Code Ann. tit. 14, § 1383 (1970). That section states that "[a] person not entitled to possession of a vehicle who, without the consent of the owner and with the intent to deprive him, temporarily or otherwise, of the vehicle or its possession, takes uses or drives the vehicle is guilty of a felony."

tation of the relevant portions of the rental agreement. Thus, contract law applies. In this jurisdiction, the common law as stated in the Restatement (Second) of Contracts controls in absence of local law to the contrary. V.I. Code Ann. tit. 1, § 4 (1993). Because the theft clause at paragraph 7 relieves the lessee from liability in certain instances, it operates as an insurance policy. Accordingly, the more specialized branch of contract law applicable to insurance contracts will also be applied.

## LESSEE'S LIABILITY UNDER THE CONTRACT

██ The plaintiff makes two separate arguments as to why Hourigan should be held liable for the damage to the rental vehicle. First, it argues that the defendant's signature on the small form which separately states that he will be liable for all damage to the vehicle regardless of fault overrides the clause at paragraph 7 which allows the defendant to escape liability in the event of theft. This interpretation of the contract makes the issue of whether or not the car was actually stolen moot, as it negates the theft clause and its attendant insurance against liability. Defendants, countering that interpretation, argue that the 'liable for all damage' language creates, at the most, an ambiguity which should be resolved against the plaintiff. Restatement (Second) Contracts, section 202 directs that all writings that are a part of the same transactions be interpreted together. In that regard, the Collision Damage Waiver on the face of the contract as well as the small, separate document, must be read in conjunction with paragraph 7, which exempts the lessee from liability for damage resulting from theft. Restatement (Second) Contracts, section 206 states that where a contract term has more than one meaning, the preferred meaning is the one which operates against the drafter. Actually three terms of this contract are implicated in this dispute. The main body of the contract imposes liability for all damage done to the vehicle if the Collision Damage Waiver is declined but partially relieves the lessee of liability under certain circumstances, theft being one of the circumstances. Another document which is separately signed reiterates the lessee's liability for all damage regardless of fault. This document speaks only to fault and is silent as to the effect of theft on lessee's liability. The terms of the contract, read as a whole,

94

contradict each other and are therefore ambiguous. Applying the controlling rules of contract construction set forth above, the contract must be construed against the drafter. Therefore, the defendant cannot be held liable for any damage resulting from theft.

### THE THEFT ISSUE

Plaintiff's alternative claim is that the vehicle was not stolen, either because Hourigan allowed John to have access to the keys or because Hourigan failed to prove that John had the intent to permanently deprive Hourigan of the vehicle. Hourigan, in defense against both theories, maintains that the car was stolen, because it was taken without his knowledge or permission.

In order to determine whether or not the defendants are liable for the damage to the plaintiff's vehicle, it is necessary to determine whether or not the vehicle was stolen, within the meaning of the agreement, before it was damaged.

■ The general rule applied in cases of automobile theft insurance is that the vehicle must have been taken with the intent to permanently deprive defendant of the vehicle. 67 ALR 4th, Automobile Theft Insurance § 9 (1989). The rule stems from the principle of contract interpretation which mandates that words in a contract are, where possible, to be given their generally prevailing meaning. Restatement (Second) Contracts, § 202.

> Unless otherwise stated, the word "theft" must be given its general and popular meaning. Accordingly, where the term 'theft' is employed but not defined in an automobile insurance contract, it is to be given the usual meaning and understanding accorded it by persons in ordinary walks of life.

Couch on Insurance 2d, §§ 42:269-279 (1982). The generally prevailing meaning given to theft as it pertains to automobile theft insurance coverage in this jurisdiction was set forth in two cases cited by plaintiff, Crowe Motor v. Ignetti, Terr.Ct. No. 365/1988 and Crystal Adventures v. Interocean, Terr.Ct. No. 386/1991. In both cases, the court required that the vehicle have been taken with the intent to permanently deprive the owner.

On the issue of theft, Hourigan, by telephonic deposition, testified that he was unaware that his car had been taken from the

hotel and that he had not allowed anyone to take the car. He further speculated that his guest, who had in fact taken the car, had taken the keys from his room without permission. He claims that he became aware of the car's disappearance and subsequent loss through collision only when the guest returned with the police later in the night.

Plaintiff argues that defendant has failed to prove that John intended to permanently deprive Hourigan of the vehicle. Whether or not the requisite intent to permanently deprive the owner was present when an automobile was taken is a fact based inquiry. In Crowe, a car had been entrusted by its owner to a stereo installer who, without permission, drove it to a different location to perform the installation. The car was damaged while a friend of the installer was returning the car to its owner. The Court held that the intent to permanently deprive the owner was absent on these facts. Judge Finch found it significant that the thief was in the process of returning the car to its owner when it was damaged. In Crystal Adventures, the policyholder had too much to drink and asked his companion to drive his car. The twenty-year old driver, who was excluded from coverage due to his youth, wrecked the car. The policyholder, after giving numerous accounts of the accident in which he consistently admitted asking the young man to drive, later asserted he had stolen the car. This assertion was made when he realized his policy did not cover drivers under the age of twenty-five. The Court found no evidence of theft.

The facts in the cases from this jurisdiction have very little bearing on the instant case and are unhelpful in the inquiry at hand. The Court has examined cases from other jurisdictions and has found two which are factually very similar to the case at bar. The Illinois Court of Appeals found the intent to permanently deprive the policyholder of his vehicle in Kelly v. State Farm Mutual Auto. Ins. Co., 34 Ill. App. 3d 290, 339 N.E.2d 467 (Ill. App. 1975). In Kelly, the policyholder lent his car to a friend. The friend later called him and asked if a third person could drive the car. The policyholder refused permission. After the friend fell asleep later that evening, the third person surreptitiously took the keys from the room, drove the car away and subsequently wrecked it.

In a Michigan case, the policyholder was drinking at a bar with fellow National Guardsmen. The policyholder left the table for a

few moments, leaving his car keys on the table. One of the men at the table took the keys, drove off in the car and was involved in an accident. The appellate court agreed with the trial court that the driver had the intent to permanently deprive the policyholder of the vehicle. The appellate court found it significant that the policyholder had, in fact, been permanently deprived of his vehicle. In that regard, the court said "the language [of the contract] should, if possible, be so interpreted as to make it of some value to the insured". Wetzel v. Cadillac Mut. Ins. Co., 17 Mich. App. 57, 169 N.W.2d 128, 130 (Mich. App. 1969).

Primary to its theory that no theft occurred is the plaintiff's assertion that Hourigan allowed John to gain access to the keys. In this regard, plaintiff presented two witnesses at trial who, as employees of Budget Rent-a-Car, had taken defendant's statement for the company. Ms. Genevieve Smail testified that defendant told her that "he rested the keys on the table and turned around to fix a couple of drinks, and by the time he came back, the keys and the gentleman were gone." Sheryl Clarke likewise testified that defendant told her "that he set the keys down on the table. He left the room; came back. The keys and the guy were gone." She further testified that he told her he had not filed a police report until after the accident.

Also, in opposition to Hourigan's defense, plaintiff asserts that his failure to alert the police and John's return to the hotel, are indicative of a permissive use of the vehicle. However, plaintiff overlooks the fact that John was brought to the hotel by police and escaped at the first opportunity. In refuting the significance of his failure to alert the police, Hourigan testified that he was unaware of the car's absence until the police alerted him.

The issue is thus one of credibility as to whether or not defendant gave the keys to John, or acquiesced to his taking them by not calling the police, or whether, as defendant testified, he was unaware that the keys or the car were missing until the police arrived.

## CONCLUSION

The plaintiff has the burden of proof on all elements of its claim. Specifically, that defendant rented a vehicle, returned the vehicle in

a damaged condition and failed to pay for the value of the repairs. These elements have been conceded by the defendant. The defendant, however, has raised a defense to the plaintiff's claim and has the burden of proving the facts which support that defense, specifically that the vehicle was stolen.

■ The Court finds that the defendant's sworn testimony regarding the evening in question is credible, supported by the circumstances surrounding the arrival of the police. No one else who was actually present that night has contradicted defendant's testimony. The testimony offered by the plaintiff on the issue of the permissiveness of the use of the vehicle is not persuasive. Words spoken casually at a rental car office, the speaker unaware of the import of his exact syntax, are not compelling.

In accord with the findings in Kelly, 34 Ill. App. 3d 290, 339 N.E.2d 467 and Wetzel, 17 Mich. App. 57, 169 N.W.2d 128, the Court finds that under the circumstances of this case, particularly the actual deprivation brought about by John and his elusive behavior, that there existed the intent to permanently deprive the owner of the vehicle.

Because the defendant has consistently told the same story regarding the events of January 9, 1992 and there has been little said or shown, absent speculation and innuendo, to contradict his story, the Court finds for the defendant and judgment shall so enter.

## JUDGMENT

This matter came before the Court May 11, 1994 for trial. The Court being fully advised, and in accordance with the opinion of even date, it is hereby

ORDERED that judgment shall enter for the DEFENDANTS and the complaint shall be DISMISSED WITH PREJUDICE; each side to bear their own costs.